SQUIRE RECORDS, INC., Appellant, *v.* VANGUARD RECORDING SOCIETY, INC., et al., Respondents, et al., Defendants.

First Department, March 29, 1966.

*Frederick Goldfeder* of counsel (*Joseph E. Brill* with him on the brief; *Brower Brill & Gangel,* attorneys), for appellant.

*Sanford M. Katz* of counsel (*Paul J. Kern* and *Donner & Piel,* attorneys), for respondents.

*Per Curiam.* Plaintiff appeals from that part of an order which dismissed the first, second and fourth causes of action alleged in the complaint.

The plaintiff, in the first cause of action, alleges injury resulting from a conspiracy among the defendants to destroy the legitimate competition offered by plaintiff in selling and distributing "Joan Baez" recordings.

In 1959, defendant Baez, a well-known folk singer, entered into an agreement with one Wells, an individual doing business under the name of Veritas Records, pursuant to which she recorded performances on master tapes, from which a record was made and, commencing in 1961, was sold to the public. According to

the plaintiff, the agreement provided that " Veritas " would have absolute and unconditional rights to the master tape.

In September, 1963, Veritas Records leased to plaintiff, Squire Records, the master tapes of " Baez's " performances under the 1959 agreement. Using these master tapes, Squire Records produced a phonograph record which was released for sale to the public in October, 1963.

However, on February 10, 1961, " Baez " entered into an agreement with defendant Vanguard to record her performances and to sell and distribute phonograph records of the performances. Baez is still performing under such contract.

The conspiracy is alleged to have developed from the competing claims of Squire and Vanguard in connection with the sale of Baez's recordings.

It is alleged by the plaintiff that from the inception of the distribution of its Baez recording, it had a wide and extensive sale. It is further alleged that plaintiff and Vanguard are engaged in the same type of business and that since October, 1963, they have been in direct and sharp competition with one another, particularly with respect to the sale of records featuring Joan Baez.

The plaintiff states that during the month of October, 1963, when it introduced its record of the Baez performances into the market, the defendants formed a conspiracy to prevent Squire from selling the record. It is claimed that the defendants undertook a course of conduct intended to destroy plaintiff's business and reputation and to intimidate retail merchants from selling the Squire recordings by " inducing belief, creating the impression, circulating reports and sending letters to the effect that the production, sale and distribution of the Squire phonograph record * * * was unlawful and illegal." It is alleged that such representations, reports, and letters, were false, and known to be false. It is further alleged that the acts of the defendants were motivated and prompted by an intention to close the avenue for the sale of the said record under the Squire label and thus impair and injure, if not destroy and bankrupt the plaintiff.

Special term interpreted the first cause of action as alleging a tort prima facie, and dismissed such cause of action for failure to plead special damages.

Although we believe that the first cause of action is sufficiently stated, we conclude that it does not sound in prima facie tort. Under that doctrine, recovery has been limited to those instances where the sole motivation for the damaging acts has been a malicious intention to injure the plaintiff. Where there are other motives, e.g., profit, self-interest, business advantage,

there is no recovery under tort prima facie. (*Beardsley* v. *Kilmer*, 236 N. Y. 80, 89–90 [1923]; *Benton* v. *Kennedy-Van Saun Mfg. Corp.*, 2 A D 2d 27, 29.) Here, the gist of the complaint is that Vanguard was seeking to destroy the competition offered by the plaintiff for its own profit and self-interest. Consequently, the first cause of action may not be claimed as one based on prima facie tort.

However, a valid cause of action is stated, sounding in a conventional tort which — while it is not necessary to label it — has been called variously, injurious falsehood, or an action for damage resulting from intentional falsehood. The allegations of the complaint come squarely within the rule as formulated in the Restatement of Torts (§ 873): "A person who, with knowledge of its falsity, makes an untrue statement concerning another which he realizes will harm the other is liable to the other for such resulting harm as he should have realized might be caused by his statement."

The nature of such cause of action was fully considered by this court in *Penn-Ohio Steel* v. *Allis-Chalmers Mfg. Co.* (7 A D 2d 441, 443, 444) wherein M. M. FRANK, J., stated: "The utterance or furnishing of false and misleading information may be actionable if done maliciously or with the intention to harm another, or so recklessly and without regard to its consequences, that a reasonably prudent person should anticipate that damage to another will naturally follow. It has been occasionally suggested that such an action is within the orbit of prima facie tort. There is no valid support in law for the suggestion. The tort of injurious or intentional falsehood finds its genesis in legal history long, long before the comparatively recent development in the area of intentional harms, which possibly have been mis-described as 'prima facie torts'. It may well be that much of the difficulty encountered in these cases emanates from the indiscriminate use of labels. If, therefore, one must be attached, perhaps other terms such as 'injurious falsehood' (86 C. J. S., Torts, § 48; Salmond, Torts [11th ed.], pp. 703–704, or an 'action for damage resulting from intentional falsehood' (*Roger* v. *McCloskey*, 305 N. Y. 75, 80, *supra*) may be better." *

It is quite clear that the allegations of the complaint come within the ambit of the cause of action as above described.

Special Term dismissed the first cause of action on the ground the special damages were not properly pleaded. Without deciding whether it is necessary to plead special damages in the

---

* (For a recent discussion of this entire area, see *Morrison* v. *National Broadcasting Co.*, 24 A D 2d 284.)

circumstances, we are of the opinion that special damages were in fact pleaded. The complaint specifically alleges that plaintiff has been damaged by injury to reputation, good will, and loss of profits. However, it pleads loss of customers, and unlike the situation in *Drug Research Corp.* v. *Curtis Pub. Co.* (7 N Y 2d 435) the plaintiff specifically names the customers who allegedly have dealings with the plaintiff, and who refused to purchase the plaintiff's recordings. More than that the plaintiff need not show at this pleading stage, to meet the requirements of alleging special damages.

We agree with Special Term that the second and fourth causes of action should be dismissed. The second cause of action is in effect a repetition of the first. The plaintiff in the fourth cause of action attempts to set up a cause in malicious abuse of process. It fails to do so, and the cause as pleaded is insufficient.

Accordingly, the order entered on October 19, 1964 should be modified on the law to reinstate the first cause of action, and as so modified affirmed, without costs or disbursements.

RABIN, J. P., STEVENS, STEUER and STALEY, JJ., concur.

Order, entered on October 19, 1964, so far as appealed from, modified, on the law, to the extent of reinstating the first cause of action, and, as so modified, affirmed, without costs and without disbursements.